IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MICHAEL JOHN ORY,
      Plaintiff,

vs.                                  Case No.: 5:07cv291/MCR/EMT

FRANK T. McHUGH, ARNP,
      Defendant.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Plaintiff's civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 1). Leave to proceed in forma pauperis has been granted (Doc. 4).

      Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," id., 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). The complaint may be dismissed if the facts as plead do not state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, — U.S. —, 127 S. Ct. 1955, 1968–69, 1974, 167 L. Ed. 2d 929 (2007) (retiring the often-criticized "no set of facts" language previously used to describe the

motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim). Upon review of the complaint, the court concludes that dismissal of this action is warranted.

Plaintiff names Frank McHugh, an Associate Registered Nurse Practitioner at Calhoun Correctional Institution Work Camp (Work Camp), as the sole Defendant in this action (Doc. 1 at 1–2). Plaintiff alleges that on October 5, 2004, while he was incarcerated at the Work Camp, he noticed three swollen sore spots on his right and left upper legs, just below the groin area, which were painful to the touch (*id*. at 7A). The next day, he was examined by a licensed practical nurse, who gave Plaintiff several packets of Ibuprofen for pain relief and stated he would refer Plaintiff to a doctor for examination (*id*.). On October 7, 2004, Plaintiff was examined by ARNP McHugh instead of a doctor (*id*. at 7B). Plaintiff advised Defendant McHugh of the three sore spots on his upper legs, and Defendant McHugh examined the areas (*id*.). After the examination, Defendant McHugh prescribed Vibramycin, an antibiotic, and Ibuprofen (*id*.). Plaintiff states his condition worsened, with continued swelling and pain associated with the spots (*id.* at 7B–7C). On October 24, 2004, Plaintiff again reported to sick call and was seen by Defendant McHugh (Doc. 1 at 7C). Plaintiff advised McHugh of his continuing pain relating to the lumps on his upper legs and lower groin area (*id.*). Defendant McHugh prescribed more Ibuprofen (*id.*).

On December 8, 2004, Plaintiff reported to sick call and was seen by Defendant McHugh (Doc. 1 at 7C). Defendant McHugh examined Plaintiff's lower extremities and stated, "You're improving." (*id.*). Defendant McHugh's comment surprised Plaintiff because the areas on his legs were more swollen, inflamed, and painful (*id.* at 7C–7D).

On June 10, 2005, Plaintiff reported to sick call complaining of a sunburn and that the lumps had worsened (Doc. 1 at 7D). Plaintiff was examined by a licensed practical nurse, who gave Plaintiff several packets of Ibuprofen and stated he would refer Plaintiff to a doctor for examination (*id.*). Five days later, Plaintiff was seen by ARNP McHugh (*id.*). Defendant McHugh examined Plaintiff's lower extremities, including touching, squeezing, and applying pressure to the swollen areas (*id.* at 7D–7E). Defendant McHugh again prescribed Vibramycin and told Plaintiff that the antibiotic needed sufficient time to work (*id.* at 7E). Plaintiff asked Defendant if his medical

problem could be serious, perhaps cancer, and Defendant responded by telling Plaintiff to return to his cell (*id.*).

Approximately twelve weeks later, on September 23, 2005, Plaintiff attended sick call due to continued swelling and pain associated with his upper legs and groin area (Doc. 1 at 7E). Plaintiff states he waited at least six weeks from his previous medical examination to allow the antibiotics to work (*id.*). Plaintiff was examined by a licensed practical nurse, who stated he would refer Plaintiff to a doctor for examination (*id.* at 7E–7F). Five days later, Plaintiff was seen by ARNP McHugh (*id.* at 7F). Defendant McHugh examined the swollen areas of Plaintiff's lower extremities (*id.*). Plaintiff explained that the medications were not working as the swelling and pain had increased (*id.*). Defendant McHugh stated he would prescribe a different antibiotic, Tetracycline (*id.*). Plaintiff asked if his medical problem could be cancer, and McHugh responded, "I'm the doctor here, let me do my job or I'll have you locked up!" (*id.* at 7F–7G). Rather than risk further angering McHugh and being placed in disciplinary confinement, Plaintiff stopped his questioning and returned to his cell (*id.*).

On December 8, 2005, Plaintiff reported to sick call, again waiting at least six weeks for the new antibiotic to take effect (Doc. 1 at 7G). The lumps had become a "larger combining mass of lumps," and a lump had developed on the left side of Plaintiff's neck (*id.*). Plaintiff was seen by a licensed practical nurse, who advised Plaintiff there was a good chance he had cancer (*id.* at 7G–7H). The nurse gave Plaintiff Ibuprofen and stated that the most he could do was refer Plaintiff to an ARPN for examination (*id.* at 7H). Plaintiff was seen by Defendant McHugh six days later upon the referral from the nurse and for a check-up before his release from prison (*id.*). Defendant McHugh examined the swollen areas (*id.*). Plaintiff asked Defendant McHugh who he should contact upon his release from prison with regard to his medical condition, but McHugh responded that he did not know and did not care (*id.* at 7H–7I). Plaintiff was released from the custody of the Florida Department of Corrections (DOC) less than two weeks later (*id.*).

Ten months later, in October of 2006, Plaintiff was incarcerated at the Lake County Jail and had been diagnosed with lymphoma (*id.* at 7J). Later that month, he was transferred to the Marion County Jail and then to hospitals, where he began chemotherapy on November 8, 2006 (*id.* at 7K–7L). Approximately one week later, Plaintiff was again placed in DOC custody, where he

continued his chemotherapy (*id.* at 7L). From February of 2007 to May of 2007, Plaintiff was in a hospital, but in May of 2007, he was transferred to New River West Correctional Institution (NRWCI) (*id.*). Plaintiff filed the instant civil rights action on December 7, 2007, while incarcerated at NRWCI (*id.* at 8).

Plaintiff claims that Defendant McHugh's failure to provide further diagnosis and treatment for the swollen, painful areas on his legs violated his Eighth Amendment rights (Doc. 1 at 8). He additionally asserts a pendant state tort claim pursuant to the court's supplemental jurisdiction (*id.*). As relief, Plaintiff seeks punitive damages and declaratory and injunctive relief (*id.*).

The Prison Litigation Reform Act, 42 U.S.C. § 1997e (PLRA), provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has recently stated that this "invigorated" exhaustion requirement is the "centerpiece" of the PLRA. Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2382, 165 L. Ed. 2d 368 (2006). The exhaustion requirement helps to ensure that the "flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." Jones v. Bock, --- U.S. ----, 127 S. Ct. 910, 914, 166 L. Ed. 2d 798 (2007). It also "attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Woodford, 126 S. Ct. at 2387 (quoting Porter v. Nussle, 534 U.S. 516, 525, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002)) (footnote omitted). The exhaustion requirement is mandatory, and there is no discretion to waive it. Woodford, 126 S. Ct. at 2382; Alexander v. Hawk, 159 F.3d 1321, 1324–26 (11th Cir. 1998).

Additionally, the PLRA exhaustion requirement requires proper exhaustion. Woodford, 126 S. Ct. at 2387–88. In Woodford, the Supreme Court clarified that proper exhaustion requires "that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id.* at 2382; *see also* Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005) (holding that § 1997e(a)'s exhaustion requirement contains "a procedural default component"—that is, "[p]risoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance

procedures before filing a federal claim"); Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) (per curiam) (holding that a prisoner did not exhaust available administrative remedies where he filed an untimely grievance without seeking leave, and failed to appeal the denial of his grievance). Thus, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 126 S. Ct. at 2386.

Before assessing whether Plaintiff has complied with 42 U.S.C. § 1997e(a), it will be helpful to explain Florida's administrative grievance procedure, as it pertains to the facts alleged in this case. Florida regulations establish a three-step grievance process within state institutions that includes an informal grievance, formal grievance, and appeal to the Office of the Secretary of the DOC. *See* Fla. Admin. Code rr. 33-103.005 to 103.007 (2006). Some types of grievances, including grievances of a medical nature may bypass the informal grievance step. *Id.*, rr. 33-103.006(3), 33-103.008 (2006). Formal grievances must be received by the institution no later than fifteen calendar days from the date on which the incident or action being grieved occurred. *Id.*, r. 33-103.011(1)(b) (2006). However, an extension of time shall be granted when the inmate clearly demonstrates that it was not feasible to file the grievance within the relevant time period and that the inmate made a good faith effort to file in a timely manner. *Id.*, r. 33-103.011(2) (2006). An inmate is entitled to advance to the next step in the grievance process if he does not receive a timely response to a grievance. *See* Fla. Admin. Code r. 33-103.011(4) (2006). Additionally, all informal and formal grievances, except those administrative appeals filed directly with the Office of the Secretary, must be filed at the institution or facility to which the inmate is presently assigned. *Id.*, r. 33-103.015(4) (2006). Therefore, if an inmate wishes to grieve an incident or action that occurred at one institution, but he is transferred to another institution, he must file either informal or formal grievance at the institution in which he is currently housed, and the staff at the inmate's present location must handle the informal or formal grievance. *Id.*

In the instant case, Plaintiff states in his complaint that he did not file any grievances on the claim of inadequate medical care raised in his complaint (Doc. 1 at 3). He states he did not do so because Defendant McHugh threatened him by telling him to "let me do my job or I'll have you locked up" (*id.* at 3A). Plaintiff additionally states that he did not file grievances because he was

waiting for the medication to work, as Defendant McHugh instructed, and he could not have completed the grievance process before he was released from the DOC  (*id.*).

Although Plaintiff apparently attempts to be exempted from the exhaustion requirement by stating that he discovered his claim too late to utilize the grievance system, the court has no discretion to waive the exhaustion requirement.  <u>Alexander</u>, 159 F.3d at 1325.  Furthermore, to the extent Plaintiff argues that his release from the DOC rendered administrative remedies unavailable, his argument is unconvincing.  The basis for Plaintiff's claim of inadequate medical care existed in June of 2005, when Plaintiff's condition had not improved and Defendant McHugh prescribed the same antibiotic that he had originally prescribed in October of 2004, and this was six months before Plaintiff's release from the DOC in December of 2005, giving him sufficient time to utilize the grievance procedures.  Additionally, Plaintiff states that in September of 2005, two months prior to his release, he began to experience "mental anguish" over the thought that he may have undiagnosed cancer, thus conceding that at that time he did not believe he was receiving adequate medical care. Plaintiff still had sufficient time before his release to at least initiate a medical grievance at the institutional level.  Moreover, Plaintiff does not allege that when he was recommitted to the DOC he attempted to file an out-of-time grievance asserting that a timely grievance was not feasible and he was filing at the earliest opportunity.  Therefore, Plaintiff's argument that he discovered his claim too late to utilize the grievance procedure, thereby rendering it unavailable, is unconvincing.

Plaintiff's argument that the alleged threat by Defendant McHugh exempts him from the exhaustion requirement is also unavailing.  Although the Eleventh Circuit has not expressed an opinion on this issue, *see* <u>Poole v. Rich</u>, 2008 WL 185527, at *2 n.2 (11th Cir. Jan. 23, 2008), some courts have concluded that administrative remedies may not be available when prison officials engage in affirmative misconduct such as threats or intimidation to deter a prisoner from filing a grievance.  *See* <u>Hemphill v. New York</u>, 380 F.3d 680, 688 (2d Cir. 2004) (stating that "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available" and determining that "threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance"); <u>Kaba v. Stepp</u>, 458 F.3d 678, 685–86 (7th Cir.2006) (determining that administrative remedies may not have been available when the prisoner

was denied forms, intimidated into not pursuing formal grievances, and retaliated against for attempting to pursue administrative relief).

In the instant case, Plaintiff admits in his complaint that Defendant McHugh's statement was made in September of 2005 (*id.*); thus, it does not explain why Plaintiff did not submit a grievance prior to that date, for example in June of 2005, when he was aware of the basis for his claim, as discussed *supra*.  Furthermore, the full context of Defendant McHugh's statement demonstrates that no reasonable person in Plaintiff's position would have deemed the statement as a threat that Plaintiff would be "locked up" if he filed an administrative grievance.  Plaintiff describes the context of the statement as follows:

> The Plaintiff then again explaining [sic] to the Defendant that the prescribed medications "were not working" and that the swelling and acute pain associated with this problem has only increased.  The Defendant with much disdain replied, "I'm going to place you on another antibiotic."  The Plaintiff then told the Defendant, "These medications prescribed to me are not working, Sir, could I possibly have maybe a cancer problem that I've been reading and learning about from others?"  The Defendant with manic force threw down some papers, turned irruptively [sic] in his chair and vehemently replied, "I'm the doctor here, let me do my job or I'll have you locked up!"  The Plaintiff not wanting to incite further outburst or anger to the Defendant, causing the Plaintiff to be placed into disciplinary confinement, the Plaintiff said no more.  The Defendant then stated, "Just go and pick up your prescriptions.  You can go now," thus ending the scheduled medical appointment at the medical infirmary.

(Doc. 1 at 7F–7G).  The context of Defendant McHugh's statement demonstrates that the threat to "lock up" Plaintiff related to Plaintiff's questioning him further about his diagnosis, not filing an administrative grievance; indeed, Plaintiff admits as much when he states that he "said no more" during the medical appointment for fear of being placed in disciplinary confinement.  Furthermore, even if Plaintiff was threatened and the threat rendered grievance procedures unavailable to Plaintiff, Plaintiff's complaint is still due to be dismissed because he has failed to allege that grievance procedures were unavailable to him upon his re-entry into DOC custody in November of 2006, once he was no longer at the Work Camp and was removed from the threat.  Therefore, Plaintiff's contention that Defendant McHugh's threat rendered administrative remedies unavailable is unconvincing.

Having determined that it is clear from the face of the complaint that Plaintiff did not exhaust his administrative remedies, and having further determined that Plaintiff's allegations fail to show that the administrative grievance was procedure was unavailable, the court must determine whether an attempt by Plaintiff to now exhaust his remedies would be time-barred, thereby rendering his claim procedurally defaulted for purposes of the PLRA.  *See* Simpson v Holder, 200 Fed. Appx. 836, 840 (11th Cir. 2006) (recognizing that Section 1997e(a)'s exhaustion requirement contains a procedural default provision) (citing Johnson, 418 F.3d at 1559).  Although prison officials may permit an untimely grievance if the inmate clearly demonstrates that it was not feasible to file the grievance within the relevant time period and the inmate made a good faith effort to file in a timely manner, *see*  Fla. Admin. Code r. 33-103.011(2) (2006), Plaintiff does not allege he ever attempted to file an out-of-time grievance, even during the seven months preceding the filing of this lawsuit when he was not in a hospital and was at NRWCI.  Therefore, he cannot satisfy the "unfeasible/good faith effort" exception.  Because Plaintiff never filed or attempted to file a timely or untimely grievance, and he would now be time-barred from doing so, his claim is procedurally defaulted under the PLRA.  Accordingly, Plaintiff's complaint should be dismissed with prejudice.[1]  *See* Simpson, 200 Fed. Appx. at 840 (affirming sua sponte dismissal of Bivens complaint with prejudice where plaintiff did not file grievances regarding claim and would now be time-barred from doing so under Florida administrative rules).

Accordingly, it is respectfully **RECOMMENDED**:

That this cause be **DISMISSED with prejudice** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[1]The court recognizes that the Supreme Court held that under the PLRA, exhaustion of administrative remedies is an affirmative defense.  Jones v. Bock, --- U.S. ----, 127 S. Ct. 910, 921 (2007).  However, the Court recognized that the usual PLRA practice would permit a district court to dismiss sua sponte a prisoner's complaint for failure to exhaust in the rare instance where the prisoner's failure to exhaust appeared on the face of his complaint.  *Id.* at 920–21; *see also* Clark v. Georgia Bd. of Pardons and Paroles, 915 F.2d 636, 640–41 (11th Cir. 1990) (explaining that a district court may dismiss a prisoner's complaint "if [it] sees that an affirmative defense would defeat the action," including the prisoner's failure to exhaust "alternative remedies"); Strattan v Langford, No. 2:07cv526-FTM-29SPC, 2008 WL 150457, at *2 (M.D. Fla. Jan. 14, 2008) (dismissing complaint sua sponte because it was apparent from the face of the complaint that plaintiff had filed the complaint prior to exhausting his administrative remedies).  Therefore, the court may properly recommend that Plaintiff's complaint be dismissed because it is clear from the face of the complaint that Plaintiff failed to exhaust his administrative remedies.

At Pensacola, Florida this 4th  day of April 2008.


                                        /s/ Elizabeth M. Timothy
                                        **ELIZABETH M. TIMOTHY**
                                        **UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**